### 16377

JOHNSON v. ATLANTIC COAST LINE R. CO.

(60 S. E. (2d) 679)

348

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence,
*for Appellant,*

*Messrs. Yarborough & McGowan* and *W. T. McGowan,*
of Florence, *for Respondent,*

July 5, 1950.

TAYLOR, Justice.

Joseph Johnson, employed by appellant as a member of a water supply gang, brought suit in the Court of Common Pleas for Florence County under the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq., for the loss of his right eye, as a result of "slipping" and falling on appellant's railroad tracks at Ravenel, South Carolina, on May 14, 1947, while engaged in unloading acetylene tanks from a dump car.

The jury found for the respondent in the sum of $1,750-.00. The appellant, having duly made motions for nonsuit, for a directed verdict, for a verdict in its favor notwithstanding the verdict of the jury in favor of the plaintiff, and for a new trial, all of which were refused, comes to this Court contending first that the Trial Judge erred in failing to grant motions for nonsuit, directed verdict, and for verdict in favor of defendant notwithstanding the verdict of the jury.

On the morning of May 14, 1947, five employees of appellant, including the respondent and a foreman, Mr. Lyons, loaded eight acetylene tanks on a dump car at Legare, South Carolina, and proceeded in a westerly direction along the railroad tracks near Ravenel, South Carolina. Upon arrival at Ravenel, the dump car was stopped directly opposite the station on what was known as a pass track, which runs for a distance parallel to the north bound track of the main line and then joins it. Switches are arranged so that cars or trains may be switched from this track to the main line south

bound track and from there to the house track, which also runs parallel and is adjacent to the station platform, which is used for the purpose of loading and unloading materials. After ordering the cylinders removed to the platform without giving any specific instructions as to how to do so, Mr. Lyons entered the station for the purpose of obtaining some shipping tags. The respondent and his fellow employees proceeded to transfer the cylinders to the platform. Two of the employees, one Broderick and respondent, were in the process of carrying out this duty when respondent lost his footing and fell, causing the cylinder, which weighed approximately two hundred pounds, to roll across his head, resulting in the loss of his right eye.

The method of transportation used by respondent and his fellow workers was to form a cradle by locking arms, the right of one with the left of the other, in which the cylinder was placed and it balanced with the other hand holding the end. This necessitated walking sidewise, the two men facing each other with the cylinder between them. The terrain consisted of the roadbed covered with crushed rock from one to two inches in diameter which is referred to as ballast and was level with the top of the ties with the rails extending above.

At that time cars had already been placed on the house track, not at the platform, but on either side of it, in such a way as to block entry of the motor dump upon this line to the platform.

Several specifications of negligence are set out in the complaint which alleges generally a failure to provide the plaintiff with a safe place to work and failing to choose a safer or less dangerous method to accomplish the operation, and failure to provide sufficient tools or appliances to handle the cylinders under the circumstances which, according to the testimony, entailed the carrying of these cylinders approximately forty-five feet in the manner, which has been heretofore described, across three sets of tracks.

The testimony also shows that, while cars were spotted on the house track in such a manner as to prevent the dump truck from reaching the loading platform, had the motor dump been placed on the house track, it would have been necessary to carry these cylinders approximately the same distance to the flat from which they could have been placed on the platform, but it would not have been necessary to carry them across the tracks where the rails extend above the cross ties and the ballast rock to the extent of the height of the rails, two lines of which are main lines and heavy gauge rails.

There is also evidence to the effect that when heavy materials are moved between the platform and cars, boards are used, but this car being three tracks away made the use of this method impossible here. In considering this evidence, we are mindful of the principle of law to the effect that the evidence and exceptions should be considered in the light of the Federal decisions interpreting the Federal Employers' Liability Act, 45 U. S. C. A. §§ 51-60; *Shiver v. Atlantic Coast Line R. Co.,* 155 S. C. 531, 152 S. E. 717; *Haselden v. Atlantic Coast Line R. Co.,* 214 S. C. 410, 53 S. E. (2d) 60.

It is the established rule that in passing upon whether there is sufficient evidence to sumbit an issue to the jury, we need only look to the evidence and reasonable inferences which tend to support the case of the litigant against whom a peremptory instruction has been given. *Wilkerson v. McCarthy & Swan, as Trustee of the Denver & Rio Grande Western Ry. Co.,* 336 U. S. 53, 69 S. Ct. 413, 93 L. Ed. 497.

Where jury trials are required, the courts must submit the issues of negligence to the jury if the evidence might justify a finding either way on those issues. *Lavender v. Kurn,* 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; *Bailey v. Central Vermont Railway Company,* 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444; *Tiller v. Atlantic*

*Coast Line R. Co.,* 318 U. S. 54, 63 S. Ct. 444, 87 L. Ed. 610, 143 A. L. R. 967.

In the *Wilkerson case, supra,* it was stated that the criterion governing the exercise of the court's discretion in granting or denying certiorari is whether the jury function in passing on disputed questions of fact and in drawing inferences from proven facts has been respected. It is further stated, 336 U. S. 53, 69 S. Ct. 420: "The Federal Employers' Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations. Not all of these costs were imposed, for the Act did not make the employer an insurer. The liability which it imposed was the liability for negligence. But judges had created numerous defenses—fellow-servant rule, assumption of risk, contributory negligence—so that the employer was often effectively insulated from liability even though it was responsible for maintenance of unsafe conditions of work. The purpose of the Act was to change that strict rule of liability, to lift from employees the 'prodigious burden' of personal injuries which that system had placed upon them, and to relieve men 'who by the exigencies and necessities of life are bound to labor' from the risks and hazards that could be avoided or lessened 'by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employee does his work.' "

In *Tiller v. Atlantic Coast Line R. Co., supra,* it was stated that "we hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence'. As this Court said in facing the hazy margin between negligence and assumption of risk as involved in the Safety Appliance Act of 1893, 45 U. S. C. A., § 1 et seq., 'Unless great care be taken, the servant's rights will be sacrificed by simply charging him with as-

sumption of the risk under another name;' and no such result can be permitted here." 318 U. S. 54, 66 S. Ct. 446.

In *Bailey v. Central Vermont Ry. Co., supra,* it is stated that reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as an appropriate tribunal to apply those standards to the facts of these personal injuries. The method of determining the liability of the carriers and of placing on them the cost of these industrial accidents may be crude, archaic, and expensive as compared with more modern systems of workmen's compensation. But, however inefficient and backward it may be, it is the system which Congress has provided. To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them. See also *Handy v. Reading Co.,* D. C., 66 F. Supp. 246.

In denying appellant's motions for a nonsuit, directed verdict, and for judgment notwithstanding the verdict, the Trial Judge stated that there was evidence from which the jury might conclude that, although the roadbed was not dangerous for the purpose for which it was constructed, it was not a safe place for transporting heavy instruments from the dump truck to the platform and whether sufficient appliances or equipment had been provided; and with this we agree.

Had the dump car been placed on the house track, the cylinders could have been loaded on the flat and moved to the platform without crossing the tracks. Certainly it cannot be denied that two men, carrying heavy cylinders, facing each other and moving sidewise with loose egg-sized rock underfoot, and rails extending the width of the rail above such rock and running horizontal to the direction in which the men were moving, are operating under conditions which might reasonably be considered as unsafe by the jury.

Appellant's second, third and fourth questions as stated in its brief are:

354

2. Did the Trial Judge err in submitting to the jury the question as to whether appellant was negligent in failing to place the dump car on the track adjacent to depot platform?

3. Did the Trial Judge err in submitting to the jury the issue of negligence as to the method used in transferring the tanks from the dump truck to the depot platform?

4. Did the Trial Judge err in submitting to the jury the issue of negligence of appellant in failing to furnish sufficient appliances?

These questions have been covered in our discussion of question number (1), all of which are resolved against the appellant.

It is our opinion that the judgment of the Trial Court should be affirmed, and it is so ordered.

FISHBURNE, STUKES and OXNER, JJ., and A. L. GASTON, Acting Associate Justice, concur.

BAKER, C. J., not participating.